CASE 69—INDICTMENT—MAY 25.

## Bowlin v. Commonwealth.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

94 391
109 572

94 391
110 428

1. HOMICIDE—CONTINUANCE.—Upon the trial of appellant for murder he was entitled to a continuance on account of the absence of a witness, who, if present, would have testified that the deceased, just before the killing, advanced rapidly toward defendant with an angry look, having his hand in his pocket, and when he came up threatened to kill defendant, the affidavit for a |continuance| showing that due

diligence had been used to procure the attendance of the witness. And in view of the conflict in the testimony as to what took place immediately preceding the killing, the error in refusing a continuance was prejudicial.

2. SAME.—Defendant was also entitled to a continuance on account of the absence of witnesses whose attendance he had used due diligence to procure, and who, if present, would have testified that deceased had offered to hire one of them to kill defendant, and also that deceased had purchased a rifle for the purpose, as stated by him, of killing defendant.

3. INSTRUCTION AS TO MANSLAUGHTER.—Upon a trial for murder. if there is any evidence tending to show the homicide is of the degr e of manslaughter, the accused is entitled to an instruction upon that hypothesis, as it is not the province of the court to weigh evidence for the purpose of determining whether the defendant is entitled to such an instruction.

TYLER & APPERSON AND J. COLEMAN REID FOR APPELLANT.

1. The court erred in refusing a continuance. (White v. Commonwealth, 80 Ky., 483; Petty v. Commonwealth, 12 Ky. Law Rep., 920.)

2. The failure of the court to give an instruction as to manslaughter was. error. (Trimble v. Commonwealth, 78 Ky., 176; Cook v. Commonwealth, 10 Ky. Law Rep., 222; Cottrell v. Commonwealth, 13 Ky. Law Rep., 306; Lewis v. Commonwealth, 14 Ky. Law Rep., 212; Campbell v. Commonwealth, 88 Ky., 403.)

3. The court should have given instruction asked by appellant as to previous threats, lying in wait, etc. (Oder v. Commonwealth, 80 Ky., 32; Bohannon v. Commonwealth, 8 Bush, 448.)

W. J. HENDRICK, ATTORNEY-GENERAL, FOR APPELLEE.

Brief not in record.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Henry Bowlin, having been indicted for murder of Henry C. Brown, convicted and sentenced to death, appeals.

According to testimony of witnesses of the Commonwealth, the deceased, while walking quietly along a public street in Mt. Sterling, and after he crossed from one corner of a square to another, was shot in the back of the neck and instantly killed by appel-

lant, who had followed, and when near enough to touch him shot with a pistol without warning. It further appears that a year or more before that, the two men had a quarrel and fight at a picnic in the country in vicinity of where they resided; and subsequently on occasion of a fight between deceased and a man named Wilson, appellant procured or had a gun with which there is evidence tending to show he intended and endeavored to shoot deceased.

In behalf of appellant, witnesses testified that in forenoon of the day of killing, there being a considerable number of persons assembled in Mt. Sterling to hear a political speech, deceased met appellant on a street and threatened to kill him, though he made no demonstration to then do so; and that appellant then procured a pistol, having come to town without one. According to the testimony of appellant, and of one or two other witnesses, he did not, in fact, follow deceased to the corner where the homicide occurred, but that before seeing deceased he had started diagonally across the street to a store-house on that corner, for the purpose of meeting a person there on business, and before reaching that place unexpectedly met deceased, who spoke to him, saying: "Damn you, I have got you now," or "I will kill you now," at the same time putting his hand in his pocket and advancing towards appellant. He further states he was at the time of that collision nearer to the corner mentioned than was deceased, and that deceased saw him when the shot was fired.

It was further proved by witnesses in behalf of appellant that deceased had, during several months

prior to the killing, repeatedly threatened to kill
appellant, and carried a gun apparently for 'that pur-
pose.   The deceased was shown to have been a much
larger man than appellant, and several witnesses tes-
tified to his reputation as a quarrelsome, overbearing
man.

The first ground for reversal we will consider is
refusal of the court to grant a continuance of the
case upon appellant's motion.

The homicide occurred near the last of October,
1892.   The indictment was found during the ensuing
November term, and on 29th of that month.   The
case was not then tried, being continued to the next
term.   But the next term, by reason of a change in
times of holding, that court began in January, and
the case was again called, 16th of that month, and
set for trial on 18th of January, 1893, when it was
commenced.

In appellant's affidavit for a continuance, he stated
three witnesses were absent; that by the first one of
them named he could prove that a short time before
the killing, deceased offered to hire and pay the wit-
ness to kill appellant, and also told witness he in-
tended to kill him.   That by the second he could
prove the deceased purchased 'a Winchester rifle for
the purpose, as stated by him to witness, of killing
appellant.   And that the third witness would prove he
was in Mt. Sterling, and saw deceased, a few moments
before the killing, rapidly advance towards appellant
with an angry look, having his hand in his pocket,
and, when he came up, used the language already
mentioned.   One of those witnesses was at the time

absent from the State, though it was stated in the affidavit his attendance could be procured at the next term of court. As to the other two, it appears due diligence had been used to have them present.

It seems to us that in view of the conflict of testimony in regard to what took place, and the relative position and conduct of appellant and deceased immediately preceding the homicide, the testimony of the absent witness in regard thereto was very important. The testimony of the other two absent witnesses was also material, because it tended to show appellant was then in danger of losing his life, or suffering great bodily harm at the hands of deceased; and also because it tended to support the theory that appellant was in constant fear and dread of deceased, and that under excitement or impulse of that fear he fired the fatal shot. And that brings us to the second ground for reversal: that is, failure of the lower court to give an instruction authorizing the jury to find appellant guilty of manslaughter.

In our opinion the testimony heard on the trial was enough, independent of that of the absent witnesses, to justify and require such an instruction, and failure of the lower court to give it was an error to the prejudice of the substantial rights of appellant. In fact it is not the province of the lower court, any more than of this, to weigh evidence for the purpose of determining whether a person on trial for his life is entitled to an instruction as to manslaughter. But if there is any evidence tending to show the homicide is of the degree of manslaughter, the accused is entitled to an instruction upon that hypothesis.

We perceive no other error of law in regard to instructions given and refused. But for the reasons indicated the judgment is reversed, and case remanded for a new trial consistent with this opinion. Judge Hazelrigg not sitting.